UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERGE PHILIPPE BEGA, *et al.*,<br><br>                Plaintiffs,<br><br>      v.<br><br>UR JADDOU, *Director,*<br>*U.S. Citizenship and Immigration Services*,<br><br>                Defendant. | Civil Action No. 22-02171 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiffs are four family members—three brothers, Serge Philippe Bega, Max Hubert Bega and Pierrot Serge Bega, and Phillipe's son, Serge Brian Bega—who, as citizens of South Africa, "invested at least $2 million dollars in the United States in order to immigrate to the United States via investment." Compl. at 1, and ¶¶ 26–28, ECF No. 1. They initiated this suit to compel the Director of the U.S. Citizenship and Immigration Services ("USCIS"), acting in her official capacity, to adjudicate their I-526 petitions, which have been pending without a decision for over three years. *See Id.* ¶¶ 5, 37, 172–73. USCIS moved to dismiss the complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to allege a plausible claim that the delay plaintiffs have encountered is "unreasonable as a matter of law" pursuant to the Administrative Procedure Act ("APA"). Defs.' Mem. Pts. & Auth. Supp. Def.'s Mot. Dismiss ("Def.'s Mem.") at 9, ECF No. 5-1.

For the reasons set forth below, the complaint is dismissed.

1

I.      BACKGROUND

Briefly reviewed below is relevant statutory, regulatory, and factual background underlying the claims followed by the procedural history of this case.

A.      **Statutory and Regulatory Background**

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, authorizes the issuance of visas to different categories of immigrants, including, under the so-called "EB-5" program, to immigrants who contribute to "employment creation" by investing in new commercial enterprises that create full-time jobs for American workers. Immigration Act of 1990, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989 (1990) (codified at 8 U.S.C. § 1153(b)(5)); *see* 8 C.F.R. § 204.6 (2020) (defining the requirements and process for EB-5 "alien entrepreneur" classification). "An I-526 petition is the mechanism by which individuals who are eligible to immigrate to the United States through the EB-5 category obtain recognition from the government that they have satisfied the investment and job-creation requirements of that visa-preference category." *Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *1 (D.D.C. July 19, 2022).

To qualify for a visa under the EB-5 program, an immigrant must file an I-526 petition with USCIS and "create full-time employment for not fewer than 10 United States citizens, United States nationals, or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)." 8 U.S.C. § 1153(b)(5)(A)(ii); 8 C.F.R. § 204.6(a)–(c). To that end, the immigrant must have made or be in the process of making an investment of at least $1,000,000 generally or at least $500,000 into a "targeted employment area." 8 U.S.C.

§ 1153(b)(5)(C)(ii) (2019).[1]  USCIS permits certain so-called "economic units" to apply for categorization as a "targeted employment area" and designation as a "regional center" through the Immigrant Investor Pilot Program, also called the Regional Center Program.  *See* Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1993 ("Appropriations Act"), Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (1992); 8 C.F.R. § 204.6(e), (m); Compl. ¶ 30.

Although Congress had consistently reauthorized the Regional Center Program since its establishment in 1992, *Bromfman v. U.S. Citizenship and Immig. Servs.*, No. 20-cv-571 (BAH), WL 5014436, at *2 (D.D.C. Oct. 28, 2021), this authorization expired on June 30, 2021, *see* Appropriations Act, *amended by* Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Div. O, § 104, 134 Stat 1182, 2148 (2020).  Upon the program's statutory sunset, USCIS announced that it would "not act on any pending I-526 petition 'that is dependent on the lapsed statutory authority and was filed before the end of the statutory authorization.'"  *Bromfman*, WL 5014436, at *4 n.4 (citations omitted); *id.* at *4 (noting that, throughout lapse of program's authorization, any actions taken by USCIS "to process plaintiff's application would not advance plaintiff's efforts to obtain a Regional Center visa—since Congress has not authorized any" (cleaned up)).

Almost nine months later, on March 15, 2022, President Biden signed the Consolidated Appropriations Act of 2022 into law, which included the EB-5 Reform and Integrity Act of 2022 reauthorizing the Regional Center Program.  *See* Pub. L. No. 117-103, Div. BB, § 101, 136 Stat.

---

[1]   The threshold amounts required for EB-5 investments have recently increased from $1,000,000 to $1,050,000 generally and from $500,000 to $800,000 for targeted employment areas.  *See* 8 U.S.C. § 1153(b)(5)(C)(ii).  Plaintiffs' petitions were filed in 2019, before these statutory monetary increases, however, and as such would be assessed based on the then-qualifying investment amounts.  *See* Compl. ¶ 37; *About the EB-5 Visa Classification*, USCIS, *available at* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-the-eb-5-visa-classification (accessed Nov. 28, 2022).

1070 (2022). The relevant agencies, including USCIS, have over the last few months reimplemented the program and resumed the intake and processing of I-526 petitions. *See id.*; *Mokkapati*, 2022 WL 2817840, at *2. During the period of lapsed authorization, USCIS held in abeyance petitions filed before July 1, 2021 and rejected any petitions filed after that date, *see id.* at *2, 6; *Bromfman*, WL 5014436, at *4 n.4.

Successful adjudication and approval of an I-526 petition confers eligibility for, but does not automatically provide, a visa to a petitioner. "Once the [I-526] petition is processed and [if] a visa becomes available—which may take years—the immigrant advances to 'conditional' lawful permanent resident status." *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020) (citing 8 U.S.C. § 1186b(a)). Thus, a successful adjudication of an I-526 petition represents only a foreign investor's (and dependent family members') eligibility to apply for two-year conditional permanent resident status either from within the United States or overseas from the State Department at the United States consular post in the petitioners' home country. *See Feng Wang v. Pompeo*, 18-cv-1732 (TSC) 2020 WL 1451598, at *2 (D.D.C. March 25, 2020); 8 U.S.C. §§ 1186b(a)(1), 1201(a), 1255(i); 8 C.F.R. § 245.2; 22 C.F.R. §§ 42.32(e), 42.41, 42.42.

Congress has placed annual limits on both the total number of individuals who can receive visas to become lawful permanent residents and the percentage of visas which can be granted to individuals from any one country. *See generally* 8 U.S.C. §§ 1151, 1152. The per-country limit permits no more than seven percent of employment-based visas to be allotted to a single country, unless cap numbers would otherwise go unused. *Id.* § 1152(a)(2), (3). As such, a visa "queue" can easily form when the number of applications exceeds the number of visas available in a given year in any given category or country. Def.'s Mem. at 12. On January 29, 2020, USCIS modified the case-assignment process for I-526 Petitions, aimed at better utilizing

countries' annual allocations of visas.  *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*, USCIS (Jan. 29, 2020) ("EB-5 Processing Announcement"), *available at* https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (accessed Nov. 28, 2022).  Under that new approach—termed the "Visa Availability" approach—priority is given to processing petitions from applicants from countries where EB-5 immigrant visas are, or will soon be, available.  *See Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach* at A1, A2, USCIS, *available at* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (accessed Nov. 28, 2022).  If a visa is or soon will be available for petitioners from a given country and the underlying project into which petitions invested has been reviewed, I-526 petitions are then reviewed in a first-in, first-out order.  *Id.* at A1, A14.

### B. Procedural Background

Plaintiffs are seeking immigrant investor visas under 8 U.S.C. § 1153(b)(5).  Compl. ¶¶ 26–37.  To that end, plaintiffs have collectively invested at least $2 million dollars into two USCIS-designated Regional Centers.  *Id.* ¶¶ 28, 30–36.  Plaintiffs thereafter filed separate Forms I-526 between April and November of 2019, *id.* ¶ 37, and now complain that USCIS has taken no action on any of their I-526 petitions over the last three years.  *Id.* ¶ 38.

On July 23, 2022, plaintiffs initiated this litigation, challenging defendant's delay in adjudicating their I-526 petitions under the APA.  *Id.* ¶¶ 42–44.  In response, defendant moved to dismiss plaintiffs' Complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, Def.'s Mot. Dismiss, ECF No. 5, which motion became ripe for resolution on October 10, 2022, *see* Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply"), ECF No. 7.

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of the plaintiff.  *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Limited*, 22 F.4th 204, 210 (D.C. Cir. 2022).  Courts do not, however, "'accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint.'" *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)) (alteration in original); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice."). A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and may do so "at any stage of the proceeding." FED. R. EVID. 201(b)(2), (d). Thus, judicial notice may be taken of factual content found on official public websites of government agencies. *See, e.g.*, *Cannon v. District of Columbia,* 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of program details from document posted on the District of Columbia's Retirement Board website); *Carik v. U.S. Dep't of Health & Human Servs.*, 4 F. Supp. 3d 41, 48 n.4, (D.D.C. 2013) (taking judicial notice of information on the federal agency's website); *Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (same).

**III.    DISCUSSION**

Defendants contend that plaintiffs have failed to state a claim upon which relief can be granted because they "fail to plausibly allege that the delay they face is unreasonable" under the APA. Def.'s Mem. at 9. The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six guiding factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotations and citations omitted).  Examining the available record using the *TRAC* factors demonstrates that plaintiffs have failed to state a claim for unreasonable delay.[2]

### A.   Scope of Information Permissibly Considered

As a preliminary matter, the parties dispute the scope of factual information appropriately considered in analyzing the *TRAC* factors at the motion-to-dismiss stage.  Plaintiffs challenge any reliance on defendant's "extra-complaint factual averments" as improper without converting the pending motion to dismiss to one for summary judgement.  Pls.' Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n") at 2, ECF No. 6.  Specifically, they assert that defendant's "main arguments" rely "extensively" on "evidence beyond the complaint," namely the details of the process USCIS follows to receive and adjudicate I-526 petitions, the effect compelling action on plaintiffs' petitions would have on that process, and the fact and effect of the Regional Center Program's sunsetting and reimplementation.  *Id.* at 3.  Further, plaintiffs contend that their complaint

---

[2]     Plaintiffs argue that "Rule 12(b)(6) motions are inappropriate for unreasonable delay claims" because such claims are "naturally rife with questions of fact" that inform the *TRAC* factor analysis.  Pls.' Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n") at 2, ECF No. 6.  The *TRAC* decision does not command assessment of the six factors only after completion of discovery, particularly in an APA case where discovery beyond the administrative record compiled by an agency may only be appropriate "when there has been a 'strong showing of bad faith or improper behavior' *or* when the record is so bare that it prevents effective judicial review."  *In re Cheney*, 334 F.3d 1096, 1103 (D.C. Cir. 2003) (quoting *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) (emphasis added).  Plaintiffs rely on a post-*TRAC* D.C. Circuit decision, as well as out-of-Circuit authority, for the proposition that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."  Pls.' Opp'n. at 1 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).  The majority view expressed by Judges on this Court, however, is that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay.  *See Mokkapati*, 2022 WL 2817840, at *4 n.4 (collecting cases).  As in those cases, the record here provides sufficient "undisputed facts to evaluate the *TRAC* factors and determine, not whether there has been an unreasonable delay as a factual matter, but rather whether plaintiffs' complaint alleges facts sufficient to state a plausible claim for unreasonable administrative delay."  *Id.* (citing *Sarlark v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)); *see also Costa v. Immigration Inv'r Program Office*, No. 22-cv-1576 (JEB), 2022 WL 17173186, at *8 (D.D.C. Nov. 16, 2022) (rejecting same argument to conclude that "the facts alleged in the Complaint, coupled with facts of which the Court may take judicial notice, permit it to adequately evaluate the TRAC factors without discovery.").

contains contrary allegations regarding the operation of the EB-5 program, and as such only the allegations in their complaint may inform the *TRAC* factor analysis. *Id.*

While generally true that a motion to dismiss is assessed based on the factual allegations contained in the complaint, which allegations are assumed to be true, plaintiffs' argument is misplaced under these circumstances. Contrary to plaintiffs' argument, courts need not accept factual allegations in a complaint over countervailing judicially noticed evidence demonstrating that the fact is not reasonably disputable and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). As noted, courts may judicially notice such facts and permissibly consider them in determining a motion to dismiss, with such treatment regularly accorded to facts found on the official, public-facing websites of government agencies as they relate to the operation of agency-run programs. *See, e.g.*, *Cannon*, 717 F.3d at 205 n.2; *Meyou v. U.S. Dep't of State*, No. 21-cv-2806 (JDB), 2022 WL 1556344, at *2 n.3 (D.D.C. May 17, 2022); *Arab v. Blinken*, No. 21-cv-1852 (BAH), 2022 WL 1184551, at *2 n.1 (D.D.C. Apr. 21, 2022); *Giliana v. Blinken*, No. 21-cv-1416 (CRC), 2022 WL 910338, at *4 n.2 (D.D.C. March 29, 2022); *Chowdhury v. Blinken*, No. 21-cv-1205 (RCL), 2022 WL 136795, at *1 n.1 (D.D.C. Jan. 14, 2022); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021); *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *1 n.4 (D.D.C. March 22, 2021); ); *Desai v. USCIS*, No. 20-1005 (CKK), 2021 WL 1110737, at *1 n.2 (D.D.C. Mar. 22, 2021); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 48 & n.3 (D.D.C. 2021).

Here, the factual assertions concerning the operation of the EB-5 program that plaintiffs argue were impermissibly relied upon in defendant's Motion are derived from information available on the official USCIS website and cannot reasonably be disputed. *See* Pls.' Opp'n at 3; *see also Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*

("Questions & Answers") at A1-A2, A14, USCIS, *available at* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (accessed Nov. 28, 2022) (describing the approach USCIS currently takes to the adjudication of I-526 petitions); Chapter 1 - Purpose and Background, USCIS, *available at* https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-1 (accessed Nov. 28, 2022) (discussing the sunsetting and reimplementation of the Regional Center Program, including the pause on the adjudication of Regional Center-affiliated I-526 petitions); *EB-5 Reform & Integrity Act of 2022 Listening Session* at 4–5, USCIS, *available at* https://www.uscis.gov/sites/default/files/document/outreach-engagements/EB-5_Reform_and_Integrity_Act_of_2022_Listening_Session.pdf (accessed Nov. 28, 2022) (same); *EB-5 What's New* ("EB-5 Processing Announcement"), USCIS, *available at* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-whats-new-0 (accessed Nov. 28, 2022) (listing as a news "alert" the resumption of the processing of Regional Center-based I-526 petitions and the implementation of the visa availability approach).  As a result, judicial notice is taken of the facts regarding the operation of the EB-5 visa program made publicly available on the USCIS website, even if plaintiffs attempted to plead contradictory allegations to support their claims.  To the extent defendant's motion to dismiss relies on this publicly available factual background, those arguments are properly considered in the *TRAC* factor analysis.[3]

---

[3]   Ironically, even as they contest defendant's reference to this publicly available background on the EB-5 program, plaintiffs submit email printouts purportedly derived from FOIA requests on which they rely as support for their own arguments on the *TRAC* factors' application. *See* Pls.' Opp'n at 10–12; Pls.' Opp'n, Ex. A, Tryon Emails, ECF No. 6-1.  Plaintiffs make no effort to explain how this plainly extra-complaint material may be considered on a Rule 12(b)(6) motion, including how these printouts would amount to evidence not subject to reasonable dispute, as the information presented cannot be said to "be accurately and readily determined from sources whose accuracy

B.   *TRAC* **Factors**

  a.  **Factors 1 and 2**

The first and second *TRAC* factors weigh in defendant's favor. These factors are "typically considered together," *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020), and "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

The first factor, asking whether the timeline for agency decision-making is governed by a "rule of reason," is the most important. *See In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021). "Whether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Tate*, 513 F. Supp. 3d at 148 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

As previously discussed, USCIS processes I-526 petitions based on a "Visa Availability" approach, which prioritizes petitions from countries for which visas are currently or soon to be available. Questions & Answers at A1. That approach does not impose any specific deadlines for the adjudication of a particular petition, but guides the general order in which applications are considered and aligns the EB-5 process with other agency adjudication processes as well as with the congressional intent behind the immigrant investor program. *See* EB-5 Processing

---

cannot reasonably be questioned." FED. R. EVID. 201(b)(2). Judicial notice will therefore not be taken of this material.

Announcement; Def.'s Mem. at 20–21.  This method has repeatedly been upheld as "reasonable and well within the agency's workload-management discretion" and "consistent with the 'wide discretion' afforded to USCIS by Congress in the 'area of immigration processing,'" *Mokkapati*, 2022 WL 2817840, at *5 (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 153–54 (D.D.C. 2017).  *See also, e.g.*, *Nohria v. Renaud*, No. 20-cv-2085 (BAH), 2021 WL 950511, at *6 n.5 (D.D.C. March 14, 2021) ("The agency's process is clearly governed by a solid rule of reason—the visa availability approach—meeting the first factor."); *Telles v. Mayorkas*, No. 21-cv-395 (TJK), 2022 WL 2713349, at *3 (D.D.C. July 13, 2022) (holding that USCIS's processing of Form I-526 petitions is governed by an "identifiable rationale" (internal quotation omitted)); *Palakuru*, 521 F. Supp. 3d at 51 (holding that for I-526 petitions "a 'first-in, first-out method' satisfies the rule-of-reason inquiry").  This case is no different: USCIS's process for adjudicating I-526 petitions is governed by an identifiable rule of reason.

As to the second factor—whether Congress has indicated a timetable for the agency action at issue—plaintiffs argue that 8 U.S.C. § 1571(b) and the EB-5 Reform and Integrity Act of 2021 both indicate a congressionally imposed deadline of 180 days for processing I-526 petitions.  Compl. ¶¶ 81, 84; Pls.' Opp'n at 8.  Indeed, section 1571(b), "the preamble to legislation providing for the institution of measures to reduce the backlog in processing of immigration benefits by the now-defunct Immigration and Naturalization Service," *Arab*, 2022 WL 1184551, at *7, states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  Similarly, section 6(b) of the EB-5 Reform and Integrity Act requires that new fees be set for the processing of EB-5 petitions at levels to recover the costs of adjudicating those petitions, based on "the goal of completing adjudications,

on average, not later than . . . 180 days after receiving an application for approval of an investment in a new commercial enterprise." EB-5 Reform and Integrity Act of 2021, H.R. 2901, 117th Cong. § 6(b)(2) (2021).  In plaintiffs' view, these provisions "make plausible [that] Congress wanted [USCIS] to decide these petitions in 180 days."  Pls.' Opp'n at 8.

Plaintiffs concede, however, that "these timelines are not mandatory" and are in fact indicative only of "legislative aspiration."  Compl. ¶¶ 81, 86.  Such "a sense of Congress resolution is not law."  *Emerg. Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008).  Absent any specific legislative deadline, "courts typically turn to case law as a guide."  *Sarlak*, 2020 WL 3082018, at *6; *see Skalka*, 246 F. Supp. 3d at 153–54 (collecting cases).  While "there is 'no per se rule as to how long is too long' to wait for agency action," *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)), "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable," *Mokkapati*, 2022 WL 2817840, at *6 (quoting *Sarlak*, 2020 WL 3082018, at *6) (alteration in original).  Consistent with that general expectation, the data published by USCIS indicate that eighty percent of I-526 petitions comparable to those submitted by plaintiffs were adjudicated within fifty-eight and a half months.  *See Case Processing Times* ("Processing Times"), USCIS, *available at* https://egov.uscis.gov/processing-times/home (accessed Nov. 28, 2022).  Plaintiffs' wait of between thirty-two and forty months for adjudication of their I-526 petitions is therefore not unreasonable as a matter of law, especially when USCIS was unable to act on plaintiffs' petitions for nine of those months while the Regional Center Program lacked authorization.  *See* Compl. ¶ 39; *see also Mokkapati*, 2022 WL 2817840, at *6.

Given the foregoing, the first and second *TRAC* factors weigh in defendants' favor.

### b. Factors 3 and 5

The third and fifth factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Here, again, both factors weigh in defendant's favor.

As to these factors, plaintiffs allege only that "the agency's delay impacts human health and welfare, not merely economic interests." Compl. ¶ 90. In the absence of other factual assertions that would allow the drawing of such an inference, this remains merely a conclusory allegation unentitled to presumptive acceptance at the motion-to-dismiss stage. *See Nurriddin*, 818 F.3d at 756; *Kowal*, 16 F.3d at 1276. Otherwise, plaintiffs' complaint raises only concerns regarding financial harm and the delay in their ability to immigrate. *See* Compl. ¶¶ 91–93. In contrast to other cases in which the third and fifth *TRAC* factors have been found to favor plaintiffs, here plaintiffs do not allege, for example, that their delayed adjudication hinders their ability "to travel internationally to visit family abroad," *Mokkapati*, 2022 WL 2817840 at *6, or prevents them from being with their spouses, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020). Although the delay in processing their I-526 petitions no doubt does impact plaintiffs' ability to plan for their future with certainty and to protect their investments, these uncertainties are inherent in the immigration process and economic in nature, and thus do not support a finding that the third and fifth *TRAC* factors weigh in plaintiffs' favor. *See Telles*, 2022 WL 2713349, at *4 (finding inability to "move forward" with "life in the United States" and "expense, stress, and uncertainty" to fall far short of health and welfare harm); *Desai*, 2021 WL 1110737, at *7 (recognizing that although plaintiff has an interest in timely adjudication of an I-526 petition, "so too do many others facing similar circumstances" (internal quotation marks

omitted)); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020) (noting that the "inability to plan [plaintiff's] future" is an inherent part of the process). The third and fifth factors therefore support dismissal.

    **c. Factor 4**

The fourth *TRAC* factor addresses whether expediting a petition "would harm other agency activities of equal or greater priority." *Mokkapati*, 2022 WL 2817840 (quoting *Sarlak*, 2020 WL 3082018, at *6). This factor can be decisive "where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain,'" even as "all the other factors considered in *TRAC* favor[]" relief. *Mashpee*, 336 F.3d at 1100 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)) (cleaned up). Here, this factor conclusively favors defendant.

Plaintiffs argue that mandamus in this case "would have no effect on a USCIS activity of a higher or competing priority" because the agency has not established a real "line" that plaintiffs' petitions stand in and has sufficient resources and funding to process many petitions concurrently. Compl. ¶ 95; Pls.' Opp'n at 9–10. This argument fundamentally mischaracterizes USCIS's adjudication process. As previously discussed, USCIS's Visa Availability approach runs concurrently with their "first in first out" rule and thus does place petitioners, such as plaintiffs, in an adjudication queue: for all those petitioners from a country for which a visa is available or will soon be available, their petitions are reviewed in first in, first out order. *See* Questions & Answers at A1, A14. Consequently, granting plaintiffs' requested relief would effectively "let [them] cut in line in front of others"—here, other South Africans and petitioners from other countries with available visas—"simply because [they] sued in this Court." *See Manzoor v. USCIS*, No. 21-cv-2126 (CKK), 2022 WL 1316427, at *6 (D.D.C. May 3, 2022) ("It

15

makes little sense to incentivize the creation of a queue of visa applicants within the docket of the federal judiciary to determine the order of the queue for visa applications."). Despite plaintiffs' understandable frustration with USCIS's pace of adjudication, judicial relief cannot serve as a vehicle for plaintiffs to "jump the line, functionally solving their delay problem at the expense of other similarly situated applicants." *Am. Hosp. Assoc. v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016). As a result, the fourth factor weighs strongly in defendant's favor.

### d. Factor 6

The last *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Here, this factor is neutral.

Plaintiffs allege that USCIS "has taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions and applications contrary to law." Compl. ¶ 141. Specifically, they contend that that USCIS has "artificially inflated" EB-5 processing times to create a preemptive defense to potential lawsuits and Congressional inquiries. *Id.* ¶ 143. Additionally, plaintiffs assert that USCIS "slowed down the adjudications in" plaintiffs' cases by engaging in political favoritism when selecting EB-5 projects for expedited processing. *Id.* ¶¶ 148, 157–58. Despite plaintiffs' claim that "relevant and probative evidence" of artificial inflation exists, no such evidence is described or cited in the Complaint. *Id.* ¶ 143. Likewise, the Complaint's assertion of political favoritism is not given any factual enhancement or citations to any sources, let alone reliable sources, and thus appears to be a speculative observation. *See id.* ¶¶ 148, 157–58.

Plaintiffs' allegations on these points lack "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678. As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against plaintiffs, and therefore "does not alter the Court's analysis." *Thakker*, 2021 WL 1092269, at *8; *Palakuru*, 521 F. Supp. 3d at 53 (considering the sixth *TRAC* factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] Form I-526 processing times").

***

Considering the six *TRAC* factors in their totality, plaintiffs have not stated a claim under the APA for unreasonable delay. While the delay plaintiffs have undergone awaiting adjudication of their I-526 petitions is unfortunate, nearly a year of that delay is attributable not to defendant, but to Congress's delay in reauthorizing the Regional Center Program. *See Mokkapati*, 2022 WL 2817840, at *7. Moreover, plaintiffs' position is no different than many other similarly situated individuals who have also waited years for the adjudication of their petitions, and USCIS, too, "face[s its] own challenges in determining how best to deploy scarce resources during an unprecedented global pandemic and while [it] work[s] to reimplement the Regional Center Program under the recently enacted EB-5 Reform and Integrity Act of 2022." *Id.*

Taken together, the *TRAC* factors at play here—USCIS's "rule of reason" governing its adjudicatory process, the lack of statutory processing deadlines, the absence of any justification for expediting plaintiffs' petitions ahead of those of similarly situated individuals, and the absence of allegations of harm to health or welfare—weigh heavily in defendant's favor and do not evidence a plausible unreasonable delay claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: December 2, 2022

_____
BERYL A. HOWELL
Chief Judge